UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

JON JONES, et al.,
                                    Plaintiffs,

                                                              11-CV-8215 (KMW)
                    -against-                                  **<u>OPINION & ORDER</u>**

ERIC T. SCHNEIDERMAN, et al.,

                                    Defendants.
----------------------------------------------------------------X

KIMBA M. WOOD, U.S.D.J.:

      After extensive discovery, Plaintiffs and Defendants have cross-filed motions for

summary judgment on Plaintiffs' as-applied void-for-vagueness challenges to New York's

combative sport ban, N.Y. Unconsolidated Laws § 8905-a (the "Ban"), and a related restriction

on liquor licensees, N.Y. Alcohol & Beverage Control Law § 106(6–c)(a) (the "Liquor Law").

For the reasons that follow, the Court DENIES Plaintiffs' motion and GRANTS Defendants'

motion as to all remaining claims.[1]

I.      **Background**

      The factual background of this case is explained at length in *Jones v. Schneiderman*, 974

F. Supp. 2d 322 (S.D.N.Y. 2013) ("*Jones II*"). Briefly, in 1997, New York enacted the Ban,

which criminalizes conduct that "materially aids" or "profits from" a "combative sport."[2] N.Y.

Unconsol. Laws § 8905-a(1)–(3). The statute defines "combative sport" as any "professional

match or exhibition" other than "boxing, sparring, wrestling, and martial arts" in which

contestants deliver blows to their opponents. *Id*. § 8905-a(1). The Ban does not further define

---

[1] Defendants also filed a motion to strike portions of Plaintiffs' Statement of Material Facts. (*See* Def. Mot. to Strike [ECF No. 106]). The Court denies that motion as moot because it grants summary judgment for Defendants without striking any evidence offered by Plaintiffs.

[2] The Ban also provides for accompanying civil penalties. *See* N.Y. Unconsol. Laws § 8905-a(3)(d).

"boxing," "sparring" or "wrestling," but it defines "martial arts" as follows:  "any professional match or exhibition sanctioned by" one of several organizations listed in the statute (the "exempt organizations").  *Id.*  The Ban authorizes the New York State Athletic Commission ("NYSAC") to establish a process for adding and removing exempt organizations from the statute's list.  *Id.*

The New York State Office of the Attorney General ("OAG"), a defendant in this action, has the authority to prosecute violations of the Ban's criminal provisions.  (*See* Declaration of Stephen Maher ("Maher Decl.") ¶¶ 3–4 [ECF No. 95]; Deposition of Stephen Maher ("Maher Dep.") at 23:6–21 [ECF No. 89 Ex. 7]).  The NYSAC lacks such prosecutorial authority, although it may refer potential statutory violations to the OAG for investigation.  (*See* Maher Dep. at 23:6–14; 93:24–94:16).  The NYSAC is also compelled by the Ban not to approve licenses for combative sport events.  Unconsol. Laws § 8905-a(2).

The OAG has never prosecuted anyone under the Ban.  (*See* Maher Decl. ¶ 6).  Over the past two decades, however, New York officials — primarily from the NYSAC — have at times indicated that the Ban prohibits the performance of certain types of mixed martial arts ("MMA"), a fighting sport that permits contestants to combine techniques from several distinct martial disciplines.  In that respect, New York stands apart from its sister states, all of which expressly permit MMA, and nearly all of which formally regulate the sport through their athletic commissions.  (*See* Declaration of Ike Lawrence Epstein ("Epstein Decl.") ¶ 13 [ECF No. 90]; Jon Lane, "MMA in New York – The Latest" [ECF No. 89, Ex. 28]).

The Liquor Law is a companion provision to the Ban.  It prohibits "retail licensee[s] for on-premises consumption" from hosting combative sport events that the Ban outlaws.  N.Y. Alco. Bev. Cont. Law § 106(6–c)(a).  The New York State Liquor Authority ("NYSLA") has the power to enforce that prohibition by "instituting a proceeding to suspend, cancel or revoke the

license of the violator." *Id.* § 106(6–c)(c); *see also id.* § 17(3) (defining enforcement power of the NYSLA).

Plaintiffs are MMA fighters, promoters, trainers, gym owners, and fans who claim that the Ban and the Liquor Law unconstitutionally constrain MMA-related activity in New York. They initially made four types of constitutional arguments:  (1) that the Ban discriminates against MMA without a rational basis, violating the Due Process and Equal Protection Clauses of the Fourteenth Amendment; (2) that the Ban discriminates against interstate commerce, violating the Commerce Clause; (3) that both statutes impermissibly prohibit expressive conduct and protected speech contained in live MMA performances, violating the First and Fourteenth Amendments; and (4) that both statutes are impermissibly vague, both facially and as applied in various respects to Plaintiffs, violating the Due Process Clause of the Fourteenth Amendment. (*See* First Am. Compl. [ECF No. 34]).

The Court previously dismissed the first three constitutional arguments, holding that the Ban has a rational basis and does not discriminate against interstate commerce, and that neither statute prohibits protected speech or expressive conduct.  *See Jones II*, 974 F. Supp. 2d at 332–39, 347–53 & nn.13–14; *Jones v. Schneiderman*, 888 F. Supp. 2d 421, 424–31 (S.D.N.Y. 2012). The Court also dismissed Plaintiffs' facial vagueness challenges to both statutes, as well as certain types of as-applied vagueness challenges.  *Jones II*, 974 F. Supp. 2d at 339–47.  But the Court declined to dismiss Plaintiffs' as-applied vagueness challenges to the Ban and the Liquor Law "to the extent they relate to" Plaintiffs' involvement with three types of MMA: (1) professional MMA sanctioned by an exempt organization ("sanctioned professional MMA"); (2) professional MMA held on tribal land; and (3) amateur MMA.  *Id.* at 341.[3]

---

[3] In *Jones II*, the Court held that those as-applied vagueness challenges to the Liquor Law were inadequately pled because no official from the NYSLA, the relevant enforcing authority, was named as a defendant.

The parties have now conducted discovery and cross-filed for summary judgment.  (*See* Pl. Summ. J. Mot. [ECF No. 86]; Def. Summ. J. Mot. [ECF No. 92]).  Plaintiffs contend that the Ban and the Liquor Law are unconstitutionally vague as applied to their involvement with sanctioned professional MMA, professional MMA held on tribal land, and amateur MMA. Defendants argue that Plaintiffs lack standing to bring those challenges, because they have not established an injury in fact caused by the actual or prospective application of either statute to their involvement with the three types of MMA at issue.  Defendants also contend that the statutes would not be unconstitutionally vague in any such application.

As explained below, Plaintiffs have failed to establish standing to bring their as-applied vagueness claims.

## II.    Legal Standard

"Whether a claimant has standing is the threshold question in every federal case, determining the power of the court to entertain the suit."  *Worley v. Giuliani*, 8 F. App'x 131, 133 (2d Cir. 2001) (internal quotation marks omitted).  The "'irreducible constitutional minimum of standing contains three elements'":

> (1) "the plaintiff must have suffered an injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  If a plaintiff lacks standing, "there is no

---

974 F. Supp. 2d at 352–53.  But the Court granted Plaintiffs leave to amend their pleadings to address that defect, *id.* at 353 n.14, and Plaintiffs subsequently filed their Second Amended Complaint, which names as defendants Dennis Rosen, in his capacity as NYSLA Commissioner and Chairman, and Jeanique Green, in her capacity as NYSLA Commissioner.  (*See* Sec. Am. Compl. [ECF No. 54]).  In light of that amendment, and the absence of a corresponding motion to dismiss, Plaintiffs' as-applied vagueness challenges to the Liquor Law are now live.

case or controversy over which a federal court may exercise jurisdiction." *In re Direxion Shares ETF Trust*, 279 F.R.D. 221, 237 (S.D.N.Y. 2012) (Forrest, J.).

The meaning of "imminent," for standing purposes, is "somewhat elastic." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013). Generally, "'threatened injury must be *certainly impending* to constitute injury in fact,' and . . . '[a]llegations of *possible* future injury' are not sufficient." *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). But the Supreme Court has not "uniformly require[d] plaintiffs to demonstrate that it is literally certain that the harms they identify will come about. In some instances, [the Court has] found standing based on a 'substantial risk' that the harm will occur[.]" *Id.* at 1150 n.5. The Supreme Court has not explained precisely "when such a standard might apply." *Hedges v. Obama*, 724 F.3d 170, 196 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 1936 (2014). In an abundance of caution, the Court

will consider how both imminence standards — "certainly impending" and "substantial risk" —

apply here.[4, 5]

---

[4] In a discrete line of cases, the Supreme Court has held that "[w]hen the plaintiff has alleged an intention to engage in a course of conduct *arguably affected with a constitutional interest*, but proscribed by a statute," the plaintiff may establish injury in fact by demonstrating "a credible threat of prosecution." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298, 302 (1979) (internal quotation marks omitted) (emphasis added); *see also Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) (same); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 15 (2010) (same); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (permitting a pre-enforcement First Amendment lawsuit where plaintiffs "alleged an actual and well-founded fear that the law will be enforced against them"). *See generally Driehaus*, 134 S. Ct. at 2342–43 (summarizing line of cases). That standard has been applied predominantly to First Amendment lawsuits seeking to enjoin the prospective application of statutory prohibitions to protected speech. *See id.* at 2340; *Humanitarian Law Project*, 561 U.S. at 7; *Am. Booksellers*, 484 U.S. at 388; *Babbitt*, 442 U.S. at 301; *see also Walsh*, 714 F.3d at 689–90 (citing *Babbitt* and *American Booksellers* as precedents for unique "standing and ripeness rules" applicable to "pre-enforcement First Amendment claims").

As the Second Circuit has explained, the "credible threat of prosecution" standard appears to be a "more permissive" standard for imminence than "certainly impending," or perhaps even "substantial risk." *Hedges*, 724 F.3d at 196; *see also Walsh*, 714 F.3d at 689 (suggesting that the "credible threat of prosecution" standard entails "somewhat relaxed standing and ripeness rules"); *N. H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 14 (1st Cir. 1996) (describing the "credible threat of prosecution" standard as "quite forgiving"). To satisfy that standard, a plaintiff need not demonstrate that a prosecution is about to occur, but merely that the plaintiff's "'fear of criminal prosecution . . . is not imaginary or wholly speculative.'" *Hedges*, 724 F.3d at 196 (quoting *Babbitt*, 442 U.S. at 302). A plaintiff may generally make that showing by establishing that the challenged statute is "'recent and not moribund'" and that government officials have not "disavow[ed]" its future enforcement. *Id.* at 197 (quoting *Doe v. Bolton*, 410 U.S. 179, 188 (1973)).

Plaintiffs suggest, unpersuasively, that *Babbitt's* "credible threat of prosecution" standard should apply to their as-applied vagueness challenges. According to Plaintiffs, those challenges are "'affected with a constitutional interest'" because they "arise under the Due Process Clause." (Pl. Supp. Br. at 3–4 [ECF No. 134]; *see also* Pl. Supp. Reply at 2 [ECF No. 142]). But it is Plaintiffs' *conduct*, not their *claims*, that must be affected with a constitutional interest under *Babbitt* and its progeny. The conduct at issue in this case fails to meet that standard; the Court has already held that the Ban does not prohibit speech or conduct protected by the First Amendment, *Jones II*, 974 F. Supp. 2d at 332–39, 353 n.14, and Plaintiffs have identified no other applicable constitutional protection. Accordingly, *Babbitt's* "credible threat of prosecution" standard is inapposite, even though Plaintiffs' claims are constitutional in nature. *Cf., e.g.*, *Knife Rights, Inc. v. Vance*, No. 11-CV-3918, 2013 WL 5434610, at *3 (S.D.N.Y. Sept. 25, 2013) (Forrest, J.) (applying "certainly impending" imminence standard to as-applied vagueness challenge that did not implicate constitutionally protected conduct).

[5] In supplemental briefing, Defendants contend that a plaintiff can have standing to bring a pre-enforcement as-applied vagueness challenge *only* where the challenged statute would be enforced against conduct "affected with a constitutional interest." (Def. Supp. Br. at 1–7 [ECF No. 140]). Absent such an underlying constitutional interest, Defendants argue, a plaintiff must actually be prosecuted before raising an as-applied vagueness challenge. A recent Eleventh Circuit decision endorses that approach. *See Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1349–51 (11th Cir. 2011) (holding that the plaintiff could not "avail itself of . . . pre-enforcement [vagueness] review" because it did not allege threatened enforcement of the challenged statute against "constitutionally protected" conduct).

The Court disagrees with Defendants and declines to adopt *Bankshot's* categorical rule. Recent Supreme Court precedent makes clear that the imminent threat of statutory enforcement may constitute a ground for challenging the constitutionality of the statute at issue, whether or not the threatened enforcement would target conduct "affected with a constitutional interest." *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, at 128–29 (2007) (holding that "where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced," and citing as examples several cases in which the threatened enforcement at issue did not target constitutionally protected conduct).

The concept of an imminent injury warrants further elaboration specific to the claims in this case.  In general, the threat of a criminal prosecution based on a plaintiff's prospective conduct may create an injury in fact, where the threat qualifies as "imminent."  In such cases, the plaintiff may challenge the constitutionality of the underlying criminal statute immediately, without risking arrest by performing the prospective conduct at issue.  *See MedImmune*, 549 U.S. at 128–29 ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced.  The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction.").

Of course, a prosecution can be imminent only if the plaintiff has "concrete plans" to perform, in the near future, the conduct that officials would consider illegal.  *Lujan*, 504 U.S. at 564.  Where a plaintiff avers mere "'some day' intentions" to commit an act, without "any specification of *when* the some day will be," *id.*, any harm that might flow from that future act — including the enforcement of an unconstitutional statute against it — is necessarily conjectural rather than imminent.  *See id.*; *see also Hassan v. United States*, 441 F. App'x 10, 11–12 (2d Cir. 2011) ("That [the plaintiff] *might* mount a run for the presidency which *might* result in some form of future injury is simply insufficient to satisfy the injury-in-fact-requirement." (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009))); *Wolfson v. Brammer,* 616 F.3d 1045, 1058 (9th Cir. 2010) (explaining that to evaluate whether a plaintiff has demonstrated a "*genuine* threat of *imminent* prosecution," courts consider "whether the plaintiff has articulated a concrete plan to violate the law in question" (internal quotation marks omitted)).[6]

---

[6] Evidence that Plaintiffs have "concrete plans" to perform conduct that would trigger allegedly unconstitutional enforcement of the Ban is also essential because their vagueness claims are as-applied, not facial.

Relatedly, an imminent threat of prosecution must target the plaintiff's planned conduct with some degree of specificity.  A government official's statement that a statute prohibits a type of conduct in the abstract — even where the official also states her intent to enforce the statutory prohibition against the public generally — is usually insufficient, without more, to establish that prosecution is imminent against a particular plaintiff.  *Compare Linehan v. Waterfront Comm'n of N.Y. Harbor*, 116 F. Supp. 401, 404 (S.D.N.Y. 1953) (Weinfeld, J.), *aff'd sub nom. Linehan v. Waterfront Comm'n of N.Y. Harbor*, 347 U.S. 439 (1954) (holding that the complaint failed "to allege any imminent prosecution against the individual plaintiffs" under the New York Waterfront Commission Act because it alleged merely "that the district attorneys of the five counties in New York City and the attorney general intend to enforce the law promptly and vigorously"), *with Int'l Longshoremen's Ass'n, AFL-CIO v. Waterfront Comm'n of N.Y. Harbor*, 495 F. Supp. 1101, 1110 & n.7 (S.D.N.Y. 1980) (Sofaer, J.), *aff'd in relevant part*, 642 F.2d 666 (2d Cir. 1981) (holding that the plaintiffs had alleged a sufficient threat of prosecution under the Waterfront Commission Act because they, unlike the plaintiffs in *Linehan*, had received "warning letters" from the defendant state commission explaining that the plaintiffs' prospective conduct would be illegal); *see also Wolfson*, 616 F.3d at 1058 (explaining that to evaluate whether a plaintiff has demonstrated a "*genuine* threat of *imminent* prosecution," courts consider "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings" (internal quotation marks omitted)); *N. H. Hemp Council, Inc. v. Marshall*, 203

---

To bring an as-applied vagueness challenge, Plaintiffs must show that enforcement of the Ban is imminent against their own conduct, as distinguished from merely hypothetical behavior.  *See Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006) (distinguishing between "'the complainant's conduct,'" which is relevant to an as-applied challenge, and "'other hypothetical applications of the law,'" which are relevant to a facial challenge (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 (1982))); *see also VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 189–91 (2d Cir. 2010) (emphasizing that "hypothetical analysis" is "ill suited for analyzing an as-applied vagueness challenge").  Plaintiffs would not be able to make that critical showing without establishing their own "concrete plans" to perform the conduct at issue.

F.3d 1, 4–5 (1st Cir. 2000) ("In general, federal courts are disinclined to provide either injunctive or declaratory relief to foreclose federal criminal prosecutions in the absence of a reasonably clear and specific threat of prosecution."); *Rincon Band of Mission Indians v. San Diego Cnty.*, 495 F.2d 1, 4 (9th Cir.), *cert. denied*, 419 U.S. 1008 (1974) (holding that government officials' statements to plaintiffs, members of an Indian tribe, that "all gambling is illegal" on tribal land "under [a] county ordinance," and that "all the laws of the county would be enforced," failed to establish a sufficient "threat of prosecution" against the plaintiffs for standing purposes). *Cf. Navegar, Inc. v. United States*, 103 F.3d 994, 999–1000 (D.C. Cir. 1997) (concluding that where state officials had indicated that they would enforce a criminal statute against the public, appellants faced an imminent threat of prosecution under only one statutory provision that "in effect single[d] out the appellants as its intended targets," rendering an otherwise generalized threat of enforcement specific to appellants).

Two final points bear mention. First, Plaintiffs must establish an injury in fact, and every other element of standing, "in the same way as any other matter on which [they bear] the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Because this case has reached the summary judgment stage, Plaintiffs "can no longer rest on . . . 'mere allegations' [of standing] but must 'set forth' by affidavit or other evidence 'specific facts' . . . which for purposes of the summary judgment motion will be taken to be true." *Id.* (citation omitted).

Second, "'standing is to be determined as of the commencement of suit.'" *Fenstermaker v. Obama*, 354 F. App'x 452, 455 n.1 (2d Cir. 2009) (quoting *Lujan*, 504 U.S. at 570 n.5 (plurality opinion)); *see also Comer v. Cisneros*, 37 F.3d 775, 791 (2d Cir. 1994) (noting that

"standing is measured as of the time the suit is brought").  Plaintiffs thus cannot rely on factual developments after November 15, 2011 — the date on which they commenced this action — to establish standing.  *See Fenstermaker*, 354 F. App'x at 455 n.1 (declining to consider events that occurred after commencement when evaluating plaintiff's standing); *Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12-CV-722, 2012 WL 4849146, at *4 (S.D.N.Y. Oct. 12, 2012) (Engelmayer, J.) ("Because lack of standing is a jurisdictional defect, a corollary of [the] rule [that standing is to be determined as of the commencement of suit] is that courts cannot consider any amendments to the initial complaint or any post-filing assignments to plaintiffs to determine whether plaintiffs have standing."); *see also Lujan*, 504 U.S. at 555 n.4 (plurality opinion) (suggesting that a plaintiff may not "establish standing on the basis of the defendant's litigation conduct occurring after standing is erroneously determined" (emphasis removed)).

**III.    Plaintiffs Lack Standing to Challenge the Ban**

Applying those principles of standing here, the Court concludes that Plaintiffs have failed to establish standing for any of their as-applied vagueness challenges to the Ban.

A.    The Stipulating Plaintiffs

As an initial matter, during the discovery stage of this action, all but three of the Plaintiffs stipulated that they "will present no testimony or other evidence in this case, oral or written, in support of any of the as-applied vagueness claims."  (Jan. 30, 2014 Stip. [ECF No. 100 Ex. A]). In part as a result of that stipulation, the record contains no evidence that any of the stipulating Plaintiffs — Gina Carano, Frankie Edgar, Matt Hammill, Danielle Hobeika, Beth Hurrle, Donna Hurle, Jon Jones, Steve Kardian, Joseph Lozito, Erik Owings, Chris Reitz, Jennifer Santiago, and Brian Stann — has suffered an injury in fact caused by Defendants and redressable by the Court.

The stipulating Plaintiffs implicitly acknowledge that dearth of evidence, but contend that "their allegations in the Second Amended Complaint are sufficient to establish standing because they are direct objects of the laws challenged in this action." (Plaintiffs' Rule 56.1 Counterstatement at 3 [ECF No. 110]). At the summary judgment stage, however, "mere allegations" are insufficient to establish standing. *Lujan*, 504 U.S. at 561. The stipulating Plaintiffs were required to "set forth by affidavit or other evidence specific facts" that, "taken to be true," establish injury in fact, causation and redressability. *Id.* (internal quotation marks omitted). Because they have failed to do so, the Court must grant summary judgment for Defendants on the stipulating Plaintiffs' claims.

B. The Non-Stipulating Plaintiffs

The three non-stipulating Plaintiffs are Zuffa, LLC, which promotes professional MMA events under the name Ultimate Fighting Championship; Don Lilly, who promotes fighting sport events and manages fighters; and Shannon Miller, who promotes fighting sport events. All three of those Plaintiffs have submitted deposition testimony and other evidence in support of their remaining as-applied vagueness challenges. They contend that the Ban is unconstitutionally vague as applied to their involvement with sanctioned professional MMA, professional MMA on tribal land, and amateur MMA. Although the non-stipulating Plaintiffs have not been prosecuted for such involvement, they claim to have been injured by the threat of prosecution. (*See* Pl. Opp. to Summ. J. at 4–10).[7]

---

[7] The non-stipulating Plaintiffs also argue that it is "beyond dispute that they suffer a cognizable injury" because they "wish to promote MMA in New York and [the Ban] therefore directly regulates them." (Pl. Opp. to Summ. J. at 3 [ECF No. 109]). The question, however, is not whether Plaintiffs are, in some general sense, part of the population that the Ban "regulates"; it is whether Plaintiffs have suffered an injury from the actual or imminent application of the Ban to their specific involvement with sanctioned professional MMA, professional MMA held on tribal land, or amateur MMA.

To establish an imminent threat of prosecution, the non-stipulating Plaintiffs must submit evidence of their concrete plans to organize and promote the three types of MMA performances listed above, and must demonstrate that enforcement of the Ban against those plans is certainly impending, or at least a substantial risk.  *See Lujan*, 504 U.S. at 560; *Clapper*, 133 S. Ct. at 1147, 1150 n.5.  The non-stipulating Plaintiffs have failed to make that showing for any of their remaining as-applied vagueness claims.

     i.   <u>Zuffa</u>

     a.  <u>Sanctioned Professional MMA</u>

In order to demonstrate an imminent threat of prosecution related to its involvement with sanctioned professional MMA, Zuffa relies almost entirely on events that occurred after the commencement of this lawsuit.  In briefing and argument related to its motions to dismiss the initial complaint and First Amended Complaint, the OAG suggested that Zuffa would be able to promote a professional MMA event sanctioned by one of the Ban's exempt organizations.  (*See* Def. Mot. to Dismiss the Compl. Reply at 6 [ECF No. 26]; Def. Mot. to Dismiss the First Am. Compl. Mem. at 19–20 [ECF No. 37]; Transcript of Feb. 13, 2013 Oral Argument at 46:1–9, 49:13–15 [ECF No. 42]).  After Zuffa began planning such an event, however, the OAG reversed course and declared all sanctioned professional MMA illegal under the Ban.  (*See* Def. Mot. to Dismiss the First Am. Compl. Suppl. Mem. at 1–2 [ECF No. 46]).  In its briefing, Zuffa describes that reversal as "a direct cause of [its] injury," characterizing the OAG's latest stance as akin to a threat of prosecution.  (Pl. Opp. to Summ. J. at 6).

The OAG's conduct during this litigation, however, is irrelevant to the Court's standing analysis.  *See Fenstermaker*, 354 F. App'x at 455 n.1 (2d Cir. 2009); *Clarex*, 2012 WL 4849146, at *4.  Zuffa must establish that it faced an imminent threat of prosecution at the time it filed this

lawsuit, not afterward.  On the present record, Zuffa cannot make that showing.  There is no evidence that the OAG contacted Zuffa about its involvement with sanctioned professional MMA before this action began — indeed, the record indicates that the OAG never warned anyone that the Ban would prohibit sanctioned professional MMA.  (*See* Maher Decl. ¶ 8 (stating that the OAG has never "been required to, or had occasion to, interpret or act upon the term 'martial arts' as it is used in [the Ban]"); Maher Dep. at 168:18–171:16 (same)).  Instead, Zuffa appears to have corresponded only with the NYSAC, inquiring repeatedly about the legality of sanctioned professional MMA under the Ban.  (*See* Apr. 29, 2014 Deposition of Ike Lawrence Epstein ("Epstein Dep.") at 47:12–50:8).  According to Zuffa, the NYSAC refused to provide "assurances" that a hypothetical sanctioned professional MMA event would not be "shut down." *Id.*

Evidence of Zuffa's dealings with the NYSAC does not establish that the company faced an imminent threat of prosecution, for several reasons.  First, the NYSAC — a non-party in this action — had no authority to enforce the Ban's criminal provisions.  That power belonged to the OAG, along with local law enforcement agencies.  As noted above, there is no evidence of any warning from the OAG — to Zuffa or anyone else — that involvement with sanctioned professional MMA would give rise to a prosecution.  *Cf. Waterfront Comm'n of N.Y. Harbor*, 495 F. Supp. at 1110 & n.7 (noting that the defendant state commission had sent "warning letters" explaining that plaintiffs' prospective conduct would be illegal, which was "significant" for standing purposes because without the letters, "plaintiffs might have failed to demonstrate a need for immediate relief").  Second, NYSAC officials never stated that sanctioned professional MMA was illegal under the Ban.  They merely refused to assure Zuffa that a hypothetical future event, the details of which were unknown, would be legal.  That refusal was not equivalent to a

statement that sanctioned professional MMA was categorically outlawed; it merely reflected a justifiably cautious approach to *ex ante* promises of immunity for prospective conduct.  Third, even if NYSAC officials *had* possessed prosecutorial authority, and *had* stated that professional sanctioned MMA would be illegal under the Ban, that statement still might not have constituted an imminent threat of prosecution.  Before this suit was filed, Zuffa appears to have inquired only about sanctioned professional MMA in the abstract, and not about a particular event.  NYSAC's statement that such generalized conduct would be illegal, without some additional targeting of Zuffa in particular, would not constitute an imminent threat of prosecution.  *See Linehan*, 116 F. Supp. at 404; *Rincon*, 495 F.2d at 4.

Zuffa's briefing emphasizes that before this lawsuit began, the company refrained from involvement with professional MMA in New York because of its concerns about the Ban.  (*See* Pl. Opp. to Summ. J. at 4).  Its decision to refrain from economic activity, however, is not alone sufficient to demonstrate an injury in fact in this case.  Zuffa's inaction must have resulted from an imminent threat of prosecution, *see MedImmune*, 549 U.S. at 128–29.  On the present record, Zuffa has failed to establish that causal link.

b.  Professional MMA on Tribal Land

Zuffa has also failed to demonstrate an imminent threat of prosecution related to its involvement with professional MMA on tribal land.  The company's corporate representative has stated that Zuffa could "[p]otentially" become involved with professional MMA on tribal land if it were permitted to do so.  (Epstein Dep. at 67:7–10; *see also* Epstein Decl. ¶ 23 (stating that Zuffa "would consider promoting" a performance on tribal land)).  That statement — the only relevant evidence in the record — establishes merely that Zuffa *might* be interested in participating in professional MMA on tribal land at some unspecified point in the future.  Such

an indeterminate commitment to act does not rise to the level of a concrete plan, and so cannot engender a corresponding imminent threat of prosecution under the Ban.  *Cf. Hassan*, 441 F. App'x at 11 ("That [the plaintiff] *might* mount a run for the presidency which *might* result in some form of future injury is simply insufficient to satisfy the injury-in-fact-requirement.").

Moreover, there is no evidence that the OAG has made any sort of targeted threat against Zuffa related to professional MMA on tribal land.  Soon after the Ban was passed, the OAG issued an informal opinion stating that the statute "may be enforced on Indian reservations." (*See* Maher Decl. Ex. A).  That general statement, issued before Zuffa was founded, does not constitute an imminent threat of prosecution against the company.  *Cf. Rincon*, 495 F.2d at 4 (holding that statements by government officials that "all the laws of the county would be enforced" on tribal land failed to establish a justiciable "threat or prosecution" against tribal members).  Since the informal opinion was issued, there is no evidence that the OAG has addressed professional MMA on tribal land in any regard, let alone Zuffa's potential involvement in particular.  (*See* Maher Decl. ¶ 10 (stating that no "possible violation of [the Ban] on Indian reservations," or "matches or exhibitions on tribal lands that might implicate [the Ban], have "come to the attention" of OAG enforcement officials)).

c.  Amateur MMA

Zuffa promotes only professional MMA events.  (*See* Epstein Dep. at 19:3–20).  There is no evidence that the company has any intention of becoming involved with amateur MMA. Accordingly, Zuffa does not face an imminent threat of prosecution related to amateur events.

      ii.   <u>Don Lilly</u>

          a.  <u>Sanctioned Professional MMA</u>

Before this suit was filed, Lilly had at least one conversation with Glen Alleyne, an

NYSAC official, about the legality of MMA in New York.  (*See* Mar. 18, 2014 Deposition of

Don Lilly ("Lilly Dep.") at 27:11–28:17).  According to Lilly, Alleyne told him that MMA was

illegal.  *Id.* at 28:22–29:2.  Alleyne then referred Lilly to several relevant statutes, including the

Ban, for more information.  *Id.* at 29:17–30:21.  When asked what, precisely, Lilly would be

arrested for if he promoted an MMA event, Alleyne declined to answer, explaining that it would

not be "up to him."  *Id.* at 33:10–12.

Lilly's testimony about the precise content of his communications with Alleyne is hard to

follow.  At one point during his deposition, Lilly testified that he did not distinguish — at least

initially — between amateur and professional MMA when talking to Alleyne, *see id.* at 28:18–

23; at another point, he stated that he expressly asked about amateur MMA, *see id.* at 39:4–7.

Lilly also testified that Alleyne expressly stated that amateur and professional MMA were each

prohibited, but then amended his answer by acknowledging that Alleyne "may not have said

amateur or professional."  *Id.* at 32:1–33:3.  At the summary judgment stage, those ambiguities

must be resolved in Plaintiffs' favor.  The Court thus interprets Lilly's deposition testimony to

indicate that Alleyne stated in 2010 that both amateur and professional MMA were illegal in

New York.

Even construed in that favorable light, however, Alleyne's remarks to Lilly before this

action commenced did not constitute an imminent threat of prosecution.  As an initial matter,

there is no evidence that Lilly formed any type of concrete plan to become involved with

sanctioned professional MMA before this suit began.  The record does not demonstrate that Lilly

considered organizing a sanctioned event, or even that he asked Alleyne general questions about sanctioned MMA (as distinct from professional MMA generally).  On those facts, Lilly's future involvement with sanctioned professional MMA was conjectural at the time of filing, as was any corresponding threat of prosecution.

Further, even if Lilly *had* developed concrete plans related to sanctioned professional MMA, his exchange with Alleyne still would not have established an imminent threat of prosecution.  As noted above, the NYSAC had no authority to enforce the Ban's criminal provisions — a fact that Alleyne made clear to Lilly by explaining that he could not determine what charges, if any, Lilly might face if he became involved with MMA.  *See id.* at 33:10–12. Prosecutorial authority belonged instead to the OAG, which issued no warning — to Lilly or anyone else — that involvement with sanctioned professional MMA would give rise to a prosecution.  *Cf. Waterfront Comm'n of N.Y. Harbor*, 495 F. Supp. at 1110 & n.7.  And even if Alleyne had possessed prosecutorial authority, it appears that he provided the type of generalized statement of law that would not, without more, have constituted an imminent threat.  *See Linehan*, 116 F. Supp. at 404; *Rincon*, 495 F.2d at 4.  Lilly testified that he asked Alleyne a "[g]eneral question" about MMA and did not propose a specific event.  (Lilly Dep. at 39:11–15). That question presumably elicited a general answer — that MMA in the abstract, rather than Lilly's planned conduct in particular, was prohibited.

Like Zuffa, Lilly communicated further with New York officials about sanctioned professional MMA after this lawsuit began.  In 2012, Lilly asked Alleyne whether it would be legal to hold a professional MMA event sanctioned by a particular exempt organization; despite Alleyne's statement that the event would be prohibited, Lilly later attempted (unsuccessfully) to contact several exempt organizations about sanctioning professional MMA in New York.  *See id.*

at 55:8–56:3, 58:23–59:6.  Because those communications occurred after the commencement of this action, however, they cannot establish Lilly's standing to sue.  *See Fenstermaker*, 354 F. App'x at 455 n.1 (2d Cir. 2009); *Clarex*, 2012 WL 4849146, at *4.

### b.  Professional MMA on Tribal Land

The record makes clear that Lilly has never intended to organize or promote professional MMA on tribal land.  In 2010, Alleyne told Lilly that the Ban would not apply to events held on an Indian reservation.  (Lilly Dep. at 20:24–21:14).  Even after receiving that advice, however, Lilly made no effort to organize or promote a professional event on tribal land, for two reasons: he lacks "a native bloodline," and he "always wanted to do a show in [his] . . . hometown, not in somebody else's area."  *Id.* at 22:11–20.  Having decisively rejected involvement with professional MMA on tribal land, Lilly faced no corresponding imminent threat of prosecution.

### c.  Amateur MMA

Finally, Lilly has failed to establish that he faced an imminent threat of prosecution under the Ban related to his involvement with amateur MMA.  Before this suit was filed, Lilly held several amateur kickboxing events in New York.  *Id.* at 34:3–35:18, 36:24–37:3.  As described above, he also expressed interest in amateur MMA; in 2010, Lilly asked Alleyne whether, in general, amateur MMA events would be permissible.  *Id.* at 38:19–39:15.  Alleyne stated that amateur MMA was illegal in the state.  *Id.*  Lilly did not propose a specific amateur MMA event to Alleyne, *see id.* at 39:11–15, and there is no evidence that Lilly proposed or planned such an event at any other time before this action commenced.

Even viewed in the light most favorable to Plaintiffs, Alleyne's remarks do not demonstrate that Lilly faced an imminent threat of prosecution related to amateur MMA.  The reasons are familiar by now.  First, there is no evidence that Lilly formed a concrete plan to hold

an amateur MMA event, beyond inquiring about the sport's legality in the abstract.  Second, the NYSAC lacked authority to enforce the Ban's criminal provisions, and there is no evidence that OAG officials with prosecutorial power had any dealings with Lilly concerning amateur MMA before this suit commenced.  Indeed, the present record indicates that the OAG never stated, in any context, that amateur MMA was prohibited by the Ban, *see* Maher Dep. at 83:4–13; never prosecuted anyone in connection with an amateur MMA event, *see* Maher Decl. ¶¶ 6, 9; and ended two investigations of potential violations of the Ban unrelated to MMA when it became clear that the events in question were likely amateur, not professional, *see id.*  That factual record shows that no prosecution was imminent.  Third, it appears that Alleyne stated merely that amateur MMA in general — rather than Lilly's proposed conduct in particular — would be illegal.  Even if Alleyne had possessed prosecutorial authority, therefore, his remarks to Lilly likely would not have constituted an imminent threat of enforcement.  *See Linehan*, 116 F. Supp. at 404; *Rincon*, 495 F.2d at 4.[8, 9]

---

[8] Plaintiffs suggest that Lilly has standing to challenge the application of the Ban to his involvement with amateur MMA because he possesses a "well-founded fear" of future prosecution.  (Pl. Opp. to Summ. J. at 8).  That argument again relies on an inapposite branch of standing doctrine.  Plaintiffs derive the "well-founded fear" standard from a discrete line of decisions involving pre-enforcement challenges to statutes that proscribed constitutionally protected conduct, usually speech.  *See Am. Booksellers*, 484 U.S. at 393 (permitting a pre-enforcement First Amendment lawsuit where plaintiffs "alleged an actual and well-founded fear that the law will be enforced against them"); *Babbitt*, 442 U.S. at 302 (permitting a pre-enforcement First Amendment lawsuit where the threat of prosecution was "not imaginary or wholly speculative"); *see also Walsh*, 714 F.3d at 689–90 (citing *American Booksellers* and *Babbitt* as precedents for the "somewhat relaxed standing and ripeness rules" applicable to "pre-enforcement First Amendment claims").  As explained above, *see supra* n.4, the standing doctrine developed in that line of decisions is inapplicable here because the Ban does not prohibit constitutionally protected conduct.  Lilly must instead establish that a prosecution is "certainly impending," or at least a "substantial risk."  *Clapper*, 133 S. Ct. at 1147, 1150 n.5.  As explained above, he has failed to make that showing.

[9] Although no party has raised the issue, Lilly's claims related to amateur MMA are likely moot in any event.  In 2012, the OAG expressly stated that amateur events are legal because the Ban deals only with "professional" matches and exhibitions, a conclusion compelled by the plain language of the statute.  Since the OAG made that statement, Lilly has held several amateur MMA events in New York without encountering resistance from the OAG, or any other official, related to the Ban.

iii.   <u>Shannon Miller</u>

a.  <u>Sanctioned Professional MMA</u>

As for the final non-stipulating Plaintiff, Shannon Miller, the record contains essentially no evidence that he has ever been involved, or contemplated becoming involved, with sanctioned professional MMA.  Toward the end of his deposition, Miller testified that he joined this lawsuit because he has "an interest in promoting professional mixed martial arts," and wants to see "mixed martial artists . . . have the same opportunities [he] had in the State of New York" as a professional boxer.  (Mar. 20, 2014 Deposition of Shannon Miller ("Miller Dep.") at 43:16–24).  Beyond that general statement, there is no indication that Miller has been involved with any form of professional MMA, let alone sanctioned professional MMA in particular.  Nor is there evidence that Miller has had contact with any New York official or exempt organization concerning professional MMA.  On that sparse record, Miller's future involvement with sanctioned professional MMA is merely conjectural, as is any threat of corresponding prosecution under the Ban.

b.  <u>Professional MMA on Tribal Land</u>

The record is comparably sparse regarding Miller's involvement with, or interest in, professional MMA on tribal land.  Miller testified that he has never held or even attended such an event, *id.* at 44:20–22, 45:24–46:2, and there is no evidence that he has considered organizing or promoting one.  Again, therefore, Miller's future involvement with this type of MMA is merely conjectural, as is the threat of corresponding prosecution.

c.  <u>Amateur MMA</u>

Like Lilly, Miller organized an amateur kickboxing event before this lawsuit commenced and discussed it with Alleyne.  *Id.* at 18:19–19:14.  Miller's attorney also contacted James Leary,

20

a lawyer with the New York Department of State, to discuss the legality of a planned event involving multiple amateur "fights of different disciplines, but single discipline within each event," such as "kickboxing" and "submission wrestling."  (*See* Mar. 24, 2010 Email from Brian Matula to James Leary [ECF No. 89 Ex. 61]).  Unlike Lilly, however, Miller did not ask any New York official, either directly or through counsel, about amateur MMA, even in the abstract. *Id.* at 14:18–15:24, 22:9–13, 25:15–25.  Instead, Miller simply "assumed it was illegal" based largely on internet research, *id.* at 14:24–15:24, 22:8, 25:20, and made no effort to become involved.  *See id.* at 25:15–25.  At the time this lawsuit was filed, therefore, Miller's future involvement in amateur MMA was merely conjectural, as was any corresponding threat of prosecution under the Ban.  The fact that Miller refrained from economic activity because of concerns about state law is insufficient, without more, to establish standing.  *See MedImmune*, 549 U.S. at 128–29.[10, 11]

## IV.   Plaintiffs Lack Standing to Challenge the Liquor Law

Plaintiffs have likewise failed to establish standing to bring any as-applied vagueness challenge to the Liquor Law.  Many of the standing deficiencies identified above apply equally to Plaintiffs' claims against the Ban's sister regulation.  Even more fundamentally, however, the Second Amended Complaint contains no allegation that the Liquor Law has been, or will imminently be, applied (even indirectly) to any particular Plaintiff's conduct, and Plaintiffs have submitted no evidence to that effect.  Instead, Plaintiffs argue that the Liquor Law is vague in the abstract or as applied to the conduct of non-parties — contentions appropriate for facial, but not

---

[10] As they did for Lilly, Plaintiffs argue that Miller has standing to challenge the application of the Ban to his involvement with amateur MMA because he possesses a "well-founded fear" of future prosecution.  (Pl. Opp. to Summ. J. at 8–9).  As explained previously, that standard is inapposite.

[11] After the OAG stated in 2012 that the Ban does not apply to amateur events, Miller — like Lilly — successfully held an amateur MMA event without encountering resistance from New York officials.  (*See* Miller Dep. at 37:14–23, 41:2–18).  Accordingly, his claims regarding amateur MMA are also likely moot.

as-applied, vagueness claims.  (*See* Pl. Summ. J. Mem. at 23–25 [ECF No. 87]; Pl. Opp. to

Summ. J. at 22–23).  Plaintiffs have thus failed to establish any injury in fact related to the

Liquor Law, and the Court grants summary judgment for Defendants on all remaining claims.

## V.    Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment is DENIED and

Defendants' motion for summary judgment is GRANTED in full.  Plaintiffs, particularly Zuffa,

may consider filing new vagueness claims based on events that occurred after this lawsuit

commenced, including the OAG's recent statements that the Ban prohibits sanctioned

professional MMA (despite its plain language to the contrary).  The Court advises Plaintiffs to

weigh the merits of a new federal suit against those of a state declaratory judgment action, given

that the latter — unlike a federal decision on vagueness grounds — could decisively settle

disputes regarding the Ban's scope.


SO ORDERED.

Dated:  New York, New York
        March 31, 2015


_____
                /s/
            Kimba M. Wood
        United States District Judge